UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COMPANA, LLC,

    Plaintiff,

    v.

AETNA, INC.,

    Defendant.

Case No. C05-0277L

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on a motion for partial summary judgment filed by plaintiff Compana, LLC ("Compana"). (Dkt. #58). Compana filed this action seeking a declaration that it is entitled to use the domain name "docfind.com." Defendant Aetna, Inc. ("Aetna") asserted nine counterclaims alleging, among other things, that Compana's use of docfind.com and other domain names infringe and dilute Aetna's famous marks. Compana seeks to dismiss Aetna's counterclaims.

For the reasons set forth below, the Court grants the motion in part and denies it in part.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 1

## II. DISCUSSION

**A.    Background.**

Aetna is in the business of providing insurance, financial services, and health care. Its registered trademark is AETNA. Aetna has also registered the marks "Aetna RX Home Delivery," "Aetna Navigator," and "Docfind."

Compana is accredited by the International Corporation for the Assignment of Names and Numbers ("ICANN") as a registrar of domain names. Under ICANN rules, domain registrars are required to submit disputes to ICANN's dispute resolution program, which includes mandatory arbitration through, among others, the National Arbitration Forum ("NAF").

Aetna initiated proceedings under the ICANN rules against Compana for its registration and use of the domain name "docfind.com." In a decision dated November 20, 2004, the NAF found that the domain name "docfind.com" infringed on Aetna's "docfind" mark and that Compana had registered the name in bad faith. Shortly after the NAF issued its decision, Aetna discovered that multiple domain names "which were identical or confusingly similar" to Aetna domain names had been registered through Compana (the "Disputed Domain Names" or the "DDN"). Declaration of Sherry Chapman (Dkt. #8) ("Chapman Decl.") at ¶ 18. The Disputed Domain Names include, for example, "aetnal.com," but do not include the disputed "docfind.com" name. All of the Disputed Domain Names were registered through Compana between November 27, 2004 and February 19, 2005. Chapman Decl. at ¶ 24.

Compana's domain name and the Disputed Domain Names redirect customers to searchguide.com, which, Aetna alleges, improperly does the following: 1) misleadingly advertises that it operates as a "meta-search" engine when it does not, 2) links to websites

that offer services related to those that Aetna provides, and 3) purports to contain links to Aetna websites, but that, in fact, direct users to other, non-Aetna sites. Chapman Decl. at ¶ 27. The registrars/owners of the Disputed Domain Names are Manila Industries, Inc. ("Manila") and Spam Free Registration Service ("Spam Free"). Chapman Decl. at ¶¶ 24, 32. Both entities used Compana as their domain name registrar. Manila's domain name also links to searchguide.com. Spam Free is the owner of the searchguide.com domain.

Compana filed this action in state court seeking a declaratory judgment that it rightfully owns the domain name "docfind.com" and that it is not infringing on Aetna's trademark. Aetna removed the case to this Court on February 16, 2005 based on federal question jurisdiction. Aetna has asserted seven counterclaims: 1) violation of the Anti-Cybersquatting Consumer Protection Act (the "ACPA"), 15 U.S.C. § 1125(d); 2) declaratory relief on trademark infringement; (3) unfair competition under § 43(a) of the Lanham Act; (4) illegal dilution of a famous mark under the Anti-Dilution Act, 15 U.S.C. § 1125(c); (5) violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.020; (6) violation of the Washington Uniform Fraudulent Transfer Act, RCW 19.40.041; and (7) common law conversion. In this motion, Compana seeks to dismiss counterclaims 6 and 7 in their entirety. Compana also seeks to dismiss counterclaims 1 through 5 with respect to the Disputed Domain Names which include: aetnarxhomedeliveries.com, aetnarxhomedelivery.com, aetnacsplans.com, aetnahomerx.com, aetnal.com, and aetnanaviagator.com. Compana argues that granting its motion will further the interests of judicial economy because only issues regarding the docfind.com name will remain for trial.

**B.    Standard.**

On a motion for summary judgment, the Court must "view the evidence in the light

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 3

most favorable to the nonmoving party and determine whether there are any genuine issues of material fact." Holley v. Crank, 386 F.3d 1248, 1255 (9th Cir. 2004). All reasonable inferences supported by the evidence are to be drawn in favor of the nonmoving party. See Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002). "[I]f a rational trier of fact might resolve the issues in favor of the nonmoving party, summary judgment must be denied." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

**C.    Analysis.**

    **1.    Evidentiary Issues.**

As an initial matter, the Court considers the admissibility of the exhibits Aetna attached to the declaration of its counsel, David Spellman, in support of its opposition to Compana's motion.[1] The exhibits include the NAF decision, which was submitted to this Court previously and is already party of the record. Compana argues that the other exhibits must be stricken as irrelevant and hearsay. The exhibits include prior sworn declarations of Jeffrey Baron, Compana's President. Because the declarations contain sufficient indicia of reliability, the Court finds them admissible and marginally relevant.

The exhibits also include the complaints in unrelated cases involving Walgreen Company and Transamerica Corporation, memoranda of other parties, and hundreds of pages of documents showing that Manila registered domain names similar to Walgreen's domain names, all of which are wholly irrelevant in this case. Aetna argues that the complaints and other pleadings are admissible under the residual hearsay exception because they relate to material facts. The complaints and memoranda, however, contain

---

[1] The evidence in support and in opposition to the motion is somewhat atypical because neither party conducted any discovery in this case.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 4

allegations, not facts.

Aetna also argues that the documents include party admissions, and Compana should be estopped from taking inconsistent positions. The only "admissions" Aetna identifies are agreed injunctions in the Walgreen and Transamerica cases. Aetna argues that the "injunctions against Compana are admissions of its unfair and deceptive practices." Aetna's Response at p. 2. The injunctions, however, do not contain findings of wrongdoing, and Compana denied liability.

The exhibits also include (1) a NAF decision regarding a complaint against Fiorucci Furniture and (2) a WIPO Arbitration and Mediation Center administrative panel decision in <u>Bendon Ltd. v. Netsphere, Inc. and Jeff Baron, Compana LLC</u>. The allegations and the findings from the NAF and WIPO decisions are not relevant or admissible to show that Compana engaged in the wrongdoing alleged in this case. Fed. R. Evid. 404(b) ("Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith"). However, one of the factors to determine bad faith under the ACPA is a person's offer to transfer domain names for financial gain "without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct." 15 U.S.C. § 1125(d)(1)(B)(VI). In Fiorucci, the NAF found that Compana purchased and registered fiorucci.com, which contained another party's trademark, then after receiving a cease and desist letter, Compana sold the domain name to another party. Spellman Decl. at Appendix p. 423. The Bendon WIPO panel found that Compana registered bendon.com, which contained Bendon's mark. Although Compana was on notice of Bendon's complaint, it nevertheless transferred the name and had no legitimate rights to it. <u>Id.</u> at 455-61. These findings are relevant to the

determination of bad faith under the ACPA.  Moreover, the Court finds the decisions admissible for that limited purpose under the residual hearsay exception.  Accordingly, the Court considers Mr. Baron's declarations, and the NAF and WIPO decisions for a limited purpose; the remainder of the exhibits to Mr. Spellman's declaration are irrelevant and inadmissible.[2]

### 2. Joinder of Manila as an Indispensable Party.

Compana argues that all of Aetna's counterclaims must be dismissed for failure to join an indispensable party, Manila.  Compana argues that all of the factors in Fed. R. Civ. P. 19(b) militate in favor of finding that Manila is an indispensable party.  However, to determine whether a party is indispensable, the Court first looks to Fed. R. Civ. P. 19(a), which provides that a party shall be joined if feasible if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action . . . ."  See, e.g., Temple v. Synthes Corp., Ltd., 498 U.S. 5, 8 (1990) (noting that no inquiry under Rule 19(b) is necessary if the threshold requirements of Rule 19(a) have not been satisfied).

Compana argues that unless Manila is joined, Manila "will not be held responsible in the event it committed wrongdoing against Aetna," Compana "would be left to pay for any wrongdoing that Manila committed," and Compana would have to file a separate lawsuit against Manila.  Compana's Motion at pp. 12-13.  Those arguments were also raised, and rejected, in the Temple case, where the Supreme Court noted that "it is not

---

[2] The Court considered the declaration of David Young, Mr. Spellman's co-counsel, which was filed erroneously as an attachment to Mr. Spellman's declaration. (Dkt. #63).  Counsel is reminded that they must comply with the Electronic Filing Procedures for Civil and Criminal Cases adopted by General Order of the Court, including the requirement that "any party electronically filing a pleading or other document is responsible for designating a docket entry title for the document."

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 6

necessary for all joint tortfeasors to be named as defendants in a single lawsuit." Temple, 498 U.S. at 7. Although Compana argues that it does not own the DDN and therefore cannot transfer them as Aetna seeks, that argument ignores the fact that the DDN have already been transferred to Aetna. Joinder of Manila is not necessary to provide the remedies Aetna now seeks, which include compensation for Compana's improper actions and an injunction prohibiting it from registering improper names. Accordingly, Manila is not an indispensable party, and this action can proceed without it.

**3.     Conversion and Washington Uniform Fraudulent Transfer Act Claims.**

In its motion, Compana argued that it cannot be liable for conversion because Aetna never had possession of any of the domain names at issue in this case. Accordingly, it cannot show that Compana wilfully interfered with any of its chattel. Aetna did not respond to Compana's argument or otherwise support its conversion claim, which fails as a matter of law.

Compana also seeks dismissal of Aetna's counterclaim under the Washington Uniform Fraudulent Transfer Act, RCW 19.40.041(a) based on seven reasons, including the fact that Compana never transferred the docfind.com domain name. In response, Aetna argues that Compana has fraudulently transferred domain names in other cases, and if it "pulls the same stunt in this case, then there will be a fraudulent transfer remedy." Aetna's Response at p. 20. Aetna's counterclaim is undisputedly not ripe, and it must be dismissed.

**4.     Washington Consumer Protection Act.**

Aetna's CPA counterclaim alleges, "Compana is misleading and misdirecting consumers who are attempting to connect to Aetna's websites, but who make minor typographical or logical errors while typing Aetna's domain names." Answer and

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 7

1  Counterclaims at ¶ 49.  To prevail on a CPA claim, a plaintiff must prove five elements:
2  "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public
3  interest impact; (4) injury to plaintiff in his or her business or property; (5) causation."
4  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780
5  (1986).

6  Compana argues that Aetna has no evidence that any consumer attempted to access
7  Aetna but was diverted to a website controlled by Compana, and no evidence that Aetna
8  has suffered an injury to its business or property.  Aetna counters that it need not show
9  actual deception; the capacity to deceive is sufficient.  See, e.g., Testo v. Russ Dunmire
10 Oldsmobile, Inc., 16 Wn. App. 39, 52 (1976).  Aetna argues that Compana's "WhoIs"[3]
11 service continued to provide false contact information for Manila, but has not shown that
12 Compana was required to update the contract information.  Aetna also contends that
13 Compana's Budgetnames site has stated that it would be relaunched soon, but no
14 relaunch has occurred.  Neither of these allegations evidences a deceptive practice.

15 Aetna further alleges that Compana's searchguide.com site advertises that it
16 "us[es] the best technology" to find "the best" for consumers, but retrieves advertisements
17 and irrelevant materials.  For example, a search for "Aetna" on searchguide.com returned
18 Aetna's site as the 62nd entry; google.com returned Aetna's site as the 2nd site.
19 Declaration of David Young (Dkt. #63) at Exs. A, B.  Touting its ability to find "the
20 best," but returning advertisements and unrelated websites has the capacity to deceive
21 consumers.  Furthermore, the DDN redirect consumers to pages on searchguide.com with

---

[3] Under the registration agreement with ICANN, registrars are required to maintain a WHOIS lookup service that allows an internet user to obtain certain identifying information about each domain name registrant.  Chapman Decl. at pp. 58-60.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 8

links that purport to be Aetna links, but are actually advertisements. Chapman Decl. at ¶ 27 (explaining that the "aetna navigator" DDN redirected her to an aetna navigator page on searchguide.com that included links like "Aetna insurance" that offered competing services).

Aetna alleges that it has been harmed by Compana's practices because Compana is using the DDN, via searchguide.com, to intentionally divert Aetna's current and potential members, customers, providers, and producers, and as a result, Aetna has lost commercial good will. Chapman Decl. at ¶¶ 33-34.[4] Although Compana argues that searchguide.com is registered by Manila, for purposes of this motion, Aetna has provided sufficient evidence to create an issue of fact regarding whether the searchguide.com site is owned or controlled by Compana. Compana's domain name redirects users to searchguide.com, and Aetna has provided evidence showing that the registrant of searchguide.com is a sham entity.[5] The declaration submitted by Compana's president does not address or

---

[4] In support of its argument, Aetna cited to "Compare Chapman Decl in 2004 with Young Decl. in 2006.") without citing to any specific portions of the declarations. Aetna's Opposition at p. 20. Because there is no 2004 declaration from Ms. Chapman in the record, the Court assumes Aetna refers to her March 2005 declaration. As set forth above, Aetna misfiled the Young declaration among the hundreds of pages attached to the Spellman declaration. This is one of many erroneous and virtually nonexistent citations in Aetna's filings that waste judicial resources and are a disservice to Aetna, as the Court is not required to comb through the voluminous record to attempt to find documents to support Aetna's position. Aetna is advised that in any future filings, its citations to the record must include a docket number, and if applicable, a specific paragraph or page number.

[5] As the Court noted in a prior order, before Manila incorporated, the DDN were registered by Spam Free, the registrant of searchguide.com. (Dkt. #41 at p. 5); see also Chapman Decl. at ¶ 23. The DDN, Manila's domain name, and Compana's domain name all link to searchguide.com. Aetna has also shown that virtually no information exists about Spam Free, and its and Compana's addresses are both P.O. Boxes in Carrollton, Texas.

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 9

1  deny the allegations regarding searchguide.com. Although that evidence might be
2  insufficient in other circumstances, it is sufficient here because of the ephemeral nature of
3  the involved entities. Accordingly, summary judgment is denied on Aetna's CPA
4  counterclaim.

### 5. Trademark Infringement, Unfair Competition, and Anti-Dilution Act.

The Trademark Act of 1964 ("Lanham Act") prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. 15 U.S.C. §§ 1114, 1125(a). The Federal Trademark Dilution Act, enacted in 1996, entitles the owner of a famous mark to enjoin "another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark." 15 U.S.C. § 1125(c)(1). Compana does not dispute that Aetna's marks are famous and distinctive, nor does it dispute that the DDN are identical and/or confusingly similar to those marks.

Aetna must show that Compana made commercial use of the DDN; commercial use means use "in connection with a sale of goods or services." Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 677 (9th Cir. 2005) (internal citation and quotation omitted). Courts have held that registrar's "acceptance of domain name registrations is not a 'commercial use' within the meaning of the Federal Trademark Dilution Act." Lockheed Martin Corp. v. Network Solutions, Inc., 985 F. Supp. 949, 959 (C.D. Cal. 1997); see also Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 879 (9th Cir. 1999) (finding that registration of websites containing plaintiff's marks was not commercial use). Aetna counters that Compana is not merely a registrar; it is also a registrant of the DDN. Through the following facts, Aetna has raised a genuine issue of fact regarding whether Compana, through Manila and Spam Free, used the DDN: the DDN were registered

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 10

1 shortly after the NAF decision; Manila did not exist until January 2005, after some of the
2 DDN were registered; before Manila incorporated, the DDN were registered by Spam
3 Free, the registered owner of searchguide.com; Manila's and Compana's domain names,
4 as well as the DDN, all link to searchguide.com; virtually no information exists about
5 Manila or Spam Free, which suggests that they might be shams; Compana was able to
6 secure the transfer of the DDN from Manila and Spam Free to Aetna after Aetna filed its
7 counterclaims; Netsphere, Manila, and Compana have used the same mailing address; and
8 Manila registered and owned the domain name companallc.com for a short period of
9 time. Although Compana's President denies use or ownership of the DDN, the Court is
10 not required to accept the truth of his denial in light of the other evidence and his prior
11 bad faith use of Aetna's docfind mark.

12 The Court also considers Compana's argument that no commercial use has been
13 made of the DDN by any entity. Although Aetna alleges that Compana has "trafficked"
14 in the DDN, Aetna has presented no evidence that Compana transferred any of the DDN
15 for consideration. See 15 U.S.C. § 1125(d)(1)(E) (defining "traffics in" as transactions
16 including "but not limited to, sales, purchases, loans, pledges, licenses, exchanges of
17 currency, and any other transfer for consideration or receipt in exchange for
18 consideration").[6] Aetna also argues that Compana has engaged in commercial use of its
19 marks because the DDN contain Aetna's marks and/or minor variations, and the DDN
20 redirect consumers to pages on searchguide.com with links that purport to be Aetna links,
21 but are actually advertisements. Chapman Decl. at ¶ 27. This case is similar to Nissan

---

[6] Cf. Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1325 (9th Cir. 1998) (finding that defendant made commercial use of plaintiff's marks; his "'business' [was] to register trademarks as domain names and then sell them to the rightful trademark owners").

ORDER REGARDING MOTION
FOR SUMMARY JUDGMENT- 11

1  Motor Co. v. Nissan Computer Co., in which defendant used his website, Nissan.com, to
2  advertise his computer business. 378 F.3d 1002, 1006 (9th Cir. 2004). The court granted
3  Nissan Motor Co.'s motion for summary judgment on its dilution and Lanham Act
4  claims, finding that defendant "traded on the goodwill of Nissan Motor by offering links
5  to automobile-related websites" and "capitalized on consumers' initial interest." Id. at
6  1019. The fact that the commercial links are not directly on the DDN sites is irrelevant
7  because the DDN redirected consumers to pages on searchguide.com with health-related
8  advertising links. See id. ("Due to the ease of clicking on a link, the required extra click
9  does not rebut the conclusion that Nissan Computer traded on the goodwill of Nissan
10 Motor's mark"). Furthermore, the host of the website makes money when an internet
11 user clicks on the advertisements. Chapman Decl. at ¶ 31. Accordingly, genuine issues
12 of fact exist precluding summary judgment on these counterclaims.

13     **6.     Anti-Cybersquatting Consumer Protection Act.**

14     Congress passed the ACPA in 1999 as an amendment to the Lanham Act to
15 prohibit cybersquatting:

16 > Cybersquatting occurs when a person other than the trademark holder registers the domain name of a well known trademark and then attempts to profit from this by
17 > either ransoming the domain name back of the trademark holder or by using the domain name to divert business from the trademark holder to the domain name
18 > holder.

19 Bosley Med. Inst., 403 F.3d at 680 (internal citation and quotation omitted). Pursuant to
20 the ACPA, a "person shall be liable in a civil action by the owner of a mark . . . if,
21 without regard to the goods or services of the parties, that person (i) has a bad faith intent
22 to profit from that mark . . .; and (ii) registers, traffics in, or uses a domain name" that is
23 confusingly similar to or dilutes another famous mark. 15 U.S.C. § 1125(d)(1)(A). A
24 domain name registrar "shall not be liable for damages under this section for the
25
26 ORDER REGARDING MOTION
   FOR SUMMARY JUDGMENT- 12

registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name." 15 U.S.C. § 1125(2)(D)(iii).  As set forth more fully above, Aetna has shown sufficient evidence for purposes of this motion to raise an issue of fact regarding whether Compana has registered or used the DDN.

The Court next considers whether there is a genuine issue of material fact regarding Compana's bad faith intent to profit from the marks.  Pursuant to the statute, the Court considers the fact that Compana, Manila, and Spam Free did not have any trademark or intellectual property rights in the domain names; those entities did not have any legitimate prior use of the domain names; the domain names are very similar to Aetna's distinctive and famous marks; the DDN's content, as reflected on the searchguide.com site, could harm the goodwill of Aetna's marks because there is a likelihood of confusion about an affiliation between Aetna and the sites; Compana's prior admitted "warehousing" of domain names; the findings in the Bendon and Fiorucci decisions that Compana registered and transferred other parties' domain names for financial gain and without a legitimate interest in those names; and Compana's prior bad faith use of the docfind.com domain name, as set forth in the NAF decision. 15 U.S.C. § 1125(d)(1)(B); see also Int'l Bancorp v. Societe Des Baines de Mer et Cercle Des Etranges a Monaco, 192 F. Supp. 2d 467, 487 (E.D. Va. 2002) (defining warehousing as "the registration of many domain names consisting of various or similar combinations of the marks of others" and noting that the practice raises an inference of bad faith).  These factors show a genuine issue of fact regarding whether Compana exhibited bad faith.

In its opposition to Compana's motion for summary judgment, Aetna requests that the Court enter summary judgment in its favor on its counterclaim that Compana has

1 violated the ACPA regarding docfind.com.  Aetna's request is improper.  Aetna's
2 responsive memorandum was not styled as a cross motion for summary judgment.  Local
3 Rule 10(e)(2) (filings must include "a title indicating the purpose of the paper").  More
4 importantly, Aetna filed its opposition on February 21, 2006, nearly a month after the
5 January 31, 2006 deadline to file dispositive motions.  Aetna has provided no explanation
6 for its failure to meet the deadline.

### III.  CONCLUSION

For all of the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Compana's motion for summary judgment (Dkt. #58).  The Court dismisses Aetna's counterclaims for common law conversion and violation of the Washington Uniform Fraudulent Transfer Act.  The remainder of Compana's motion is denied.

DATED this 27th day of March, 2006.

*[signature]*
Robert S. Lasnik
United States District Judge